STEFANSKI *v.* BECK

1. JUDGMENT—SUMMARY JUDGMENT—AUTOMOBILES.

Whether a vehicle was driven with the permission of its "owner" could not be determined summarily where whether defendant was an owner or equitable owner posed a factual question and where issues of whether the vehicle was furnished or available for defendant's regular use and whether his use was in a business or occupation were questions more factual than legal.

2. JUDGMENT—SUMMARY JUDGMENT—ISSUES OF MATERIAL FACT—DEPOSITIONS AND AFFIDAVITS.

Trial judge erred in granting summary judgment where there were genuine issues of material fact that could not be resolved upon depositions and affidavits.

Appeal from Oakland, William John Beer, J. Submitted Division 2 October 8, 1970, at Lansing. (Docket No. 8455.) Decided December 7, 1970.

Complaint by John and Margaret Stefanski against Martin L. Beck and St. Paul Insurance Company for personal injuries. Default judgment against defendant Beck. Summary judgment for defendant St. Paul Insurance Company. Plaintiffs appeal. Reversed and remanded.

*Patterson & Patterson, Whitfield, Manikoff and White* (by *Lawrence R. Ternan*), for plaintiffs.

*Sauer & Girard,* for defendant St. Paul Insurance Company.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2]  41 Am Jur, Pleading § 342.

Before: LEVIN, P. J., and T. M. BURNS and J. E. HUGHES,* JJ.

PER CURIAM. Plaintiffs John and Margaret Stefanski, claiming that they were damaged by the negligent driving of the defendant, Martin L. Beck, commenced an action against him and Michael C. Green, the titleholder of the vehicle he was driving. A default judgment was entered against Martin Beck in favor of John Stefanski for $8,000 and Margaret Stefanski for $20,000.

The plaintiffs then caused a writ of garnishment to issue against the defendant, St. Paul Insurance Company, which had written a policy insuring an automobile owned by Martin Beck's father. The policy included Martin Beck as an additional insured. The plaintiffs claim that the insurance company is liable because the vehicle Martin was driving is covered under the policy as a non-owned automobile.

The policy defines non-owned automobile to mean "an automobile not owned by or furnished or available for the regular use of either the Named Insured or any resident of the same household, other than a temporary substitute automobile". The critical word "owned" is not defined in the policy.

In the exclusion section it is provided that the coverage does not apply "to a non-owned automobile while used in any other business or occupation, except a private passenger automobile operated or occupied by the Named Insured or his private chauffeur or domestic servant". The policy definition of the term "insured" provides that as to the use of a non-owned automobile a "relative" is an insured "only with respect to a private passenger automobile or utility trailer, provided the person using such automobile has received the permission of its owner

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and the use is within the scope of such permission".

The insurance company denied liability, contending:

1. that the vehicle Martin Beck was driving was an owned, not a non-owned, automobile; owned automobiles not being covered unless, with an exception not here pertinent, they are specifically identified and itemized in the policy.

2. even if it was a non-owned automobile,

(a) it was "furnished or available" for Martin's "regular use", or

(b) was used by Martin in connection with a "business or occupation", or

(c) was used by Martin without the permission of its owner, Michael C. Green.

Motions for summary judgment were filed by the parties, supporting and controverting affidavits were filed and Michael Green's deposition was taken.

In the summer of 1962 Martin Beck was a young man and was working with three friends, one of whom was Michael Green, in a musical group that called itself The Gentlemen Four. The boys obtained a summer job in Flint, but resided elsewhere. Each of the boys contributed $25 toward the $100 purchase price of a 1953 Chevrolet, the vehicle involved in the accident resulting in plaintiffs' injuries. Three of the boys were under 21 years of age and Michael Green was 21. The title of the vehicle was registered in Green's name.

In granting summary judgment in favor of the insurance company, the trial judge declared that the term "owner" as used in the policy does not mean "a State of Michigan secretary of state title registered owner" and that in actuality Martin was one of the owners.

On this appeal, we see no need to decide whether, as claimed by the insurance company, an "equitable"

owner is an owner within the meaning of the policy. Even if one who is not a titleholder can be an "owner", whether Martin Beck was an owner or equitable owner poses a factual question. Similarly, whether the 1953 Chevrolet was "furnished or available" for Martin's "regular use" and whether his use was in a "business or occupation" or, if Michael Green was the owner, was with Green's permission, are questions more factual than legal.

On deposition Michael Green claimed that he had "control" of the automobile and the right to prevent Martin from driving it and had told him not to drive it; in the light of that testimony the judge could not summarily determine that Martin had an ownership right in the automobile.

Green also testified that the vehicle "might" have been used three or four times a week; it was not the exclusive means of transportation as the boys had access to other automobiles. Even if the use of the vehicle for commuting purposes could properly be regarded as a business or occupational use, within the meaning of the policy, on which we express no opinion, the frequency and exclusivity of the use for that purpose might bear on the soundness of such a construction of the policy as applied to the facts of this case.

In the light of Green's deposition testimony that Martin used the vehicle infrequently, and that he had restricted Martin's use, it would not be proper to conclude summarily that the vehicle was furnished or available to Martin for his regular use.

While Michael Green had attempted to restrict Martin's use of the vehicle, he left the key where Martin could use it. Moreover, plaintiffs might be entitled for this purpose to the benefit of the presumption that the driver (Martin) of the vehicle at the time of the accident was driving with the con-

sent and knowledge of the owner.[1] Also there is an issue, impliedly recognized in the judge's conclusion that Martin was an "equitable" owner, as to whether Green had the right to restrict Martin's use. Therefore, the issue of whether the vehicle was driven with the permission of its "owner" could not be determined summarily.

It, therefore, clearly appears that there are genuine issues of material fact that could not be resolved upon the deposition of Michael Green and the affidavits. The judge erred in granting summary judgment.

The plaintiffs alternatively contend that the insurance company is in all events liable to pay the judgment in their favor because it wrongfully refused to defend Martin against entry of the judgment. Deciding this contention of the plaintiffs would require the enunciation or rejection of doctrine whose place in our jurisprudence is not established.

The parties have prepared careful briefs of the law on that and various other legal questions involved in resolving the foregoing issues and have asked us to express an opinion regarding those issues without regard to whether we affirm or reverse. It is, however, a sound policy that appellate courts avoid declaring abstract rules of law and do not attempt to declare the law except upon a developed factual record. While this policy is not adhered to with unvarying regularity, we do not think it would be wise to deviate from it in this case.

Reversed and remanded for trial. Costs to abide the event.

---

[1] See *Detroit Automobile Inter-Insurance Exchange* v. *Gordon* (1968), 15 Mich App 41, 43.